**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

GARY CARPENTER,

    Plaintiff,

*v*.                                CASE NO. 08-CV-10279

COMMISSIONER OF            DISTRICT JUDGE PAUL V. GADOLA
SOCIAL SECURITY,             MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits and supplemental security income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 10, 11.)

Plaintiff was 36 years of age at the time he alleges his disability began. (Transcript, Dkt. 8 at 29.) Plaintiff's relevant employment history included 6 years as a carpenter for a construction company. (Tr. at 79.)

Plaintiff filed the instant claims on February 28 and March 12, 2004, alleging that he became unable to work on December 18, 2002. (Tr. at 61-64, 261-63.) The claims were denied at the initial administrative stages. (Tr. at 41.) In denying Plaintiff's claims, the Defendant Commissioner considered osteoarthritis as a possible basis of disability. (*Id.*)

On July 31, 2006, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Karen Goheen, who considered the case *de novo*. In a decision dated December 11, 2006, the ALJ found that Plaintiff was not disabled. (Tr. at 20-30.) Plaintiff requested a review of this decision. (Tr. at 12-19.)

The ALJ's decision became the final decision of the Commissioner on November 29, 2007, when the Appeals Council denied Plaintiff's request for review. (Tr. at 7-9.) *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004). On January 18, 2008, Plaintiff, who is proceeding *pro se*, filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

## B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with

observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

4

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel*, 74 Fed. App'x at 524. "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and

considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

   D.   **Administrative Record**

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that in March 2003, at the request of Dr. Vettraino, Plaintiff saw Dr. Paul Lewis for pain in the right knee. (Tr. at 152.) Plaintiff recounted that he had injured the knee the previous December. (*Id.*) An MRI showed a torn meniscus (Tr. at 126), and in April 2003, Plaintiff underwent arthroscopic knee surgery. (Tr. at 122-24, 134-36.) One month later, Dr. Lewis reported that Plaintiff stated that "he has some pain, but is otherwise doing well." (Tr. at 158.) The doctor observed swelling and removed fluid from the knee. (*Id.*)

One month later, Plaintiff recounted to Dr. Lewis that he had reinjured his right knee when he slipped and fell from a ladder. (Tr. at 167.) X-rays of the knee were negative and no ligament instability was found. (*Id.*) The doctor recommended that Plaintiff not undertake any climbing or work activities. (*Id.*)

Approximately 11 months later, Plaintiff returned to Dr. Lewis reporting pain in the left knee similar to that experienced earlier in the right knee. (Tr. at 169.) MRI examinations revealed tears to the meniscus in both knees. (Tr. at 203-04.)

In June 2004, Plaintiff underwent a second arthroscopic procedure to the right knee. (Tr. at 175-76.) Eight days after the surgery, the doctor reported that the motion of the knee was restricted, but that there was no swelling. (Tr. at 164.) Physical therapy was recommended. (*Id.*)

In October 2004, Plaintiff underwent the arthroscopic repair of his left knee. (Tr. at 197-98.) Approximately three weeks after the surgery, Dr. Lewis reported that Plaintiff was "doing well,"

with some stiffness and "no significant pain." (Tr. at 196.) Physical therapy was again prescribed. (*Id.*)

In June 2006, Plaintiff returned to Dr. Lewis with complaints of pain in the left knee. (Tr. at 192.) An MRI showed a torn meniscus. (Tr. at 193.) Arthroscopic surgery was performed July 11, 2006. (Tr. at 190.) Approximately 2 weeks later, the doctor reported that there was no swelling and that Plaintiff "has good range of motion" in the knee. (Tr. at 191.)

Plaintiff was also seen by physicians of the Lakeland Physicians Group, primarily Dr Zalla. X-rays of Plaintiff's knees taken in March 2006 were negative. (Tr. at 230.) X-rays of Plaintiff's chest and lungs showed no change from previous films showing evidence of chronic obstructive pulmonary disease. (Tr. at 230, 239, 254.) In August 2006, the doctor completed a Medical Examination Report for the Michigan Department of Human Services. He stated that Plaintiff's gait was mildly impaired and reported diminished range of motion in Plaintiff's knees. (Tr. at 219.) Other physical findings were listed as "normal." (*Id.*) The doctor stated his opinion that Plaintiff could lift up to 10 pounds occasionally, could undertake lifting and grasping activities with both hands, but should not operate foot controls. (Tr. at 220.) He felt Plaintiff could stand and walk 2 of 8 hours. (*Id.*)[2]

### E.   ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity at any relevant time. (Tr. at 25.) At step two, the ALJ found that Plaintiff's knees and chronic obstructive pulmonary

---

[2] I note that these findings are generally consistent with the Commissioner's definition of sedentary work. 20 C.F.R. § 404.1567(a).

condition were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform his previous work as a carpenter. (*Id.*) At step five, using the Commissioner's grid rules as a guide, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy. (Tr. at 29-30.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of sedentary work. (Tr. at 29-30.)

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Social Security Ruling 83-10 clarifies this definition, explaining that:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

S.S.R. 83-10, 1983 WL 31251, at *5 (1982).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

#### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. Attached to his submission is a reproduction of one page of the transcript, consisting of an excerpt from one of Dr. Lewis's operative reports. (Tr. at 198.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

On this record, I suggest that substantial evidence supports the Commissioner's findings. After his most recent surgeries, subsequent to the report cited by Plaintiff, Dr. Lewis reported that Plaintiff was "doing well," with some stiffness but "no significant pain" and "has good range of motion" in the knee. (Tr. at 191, 196.) I am unable to find any evidence showing that the condition of Plaintiff's lungs significantly impaired his ability to undertake work functions. In August 2006, Dr. Zalla, a treating physician, stated his opinion that Plaintiff could undertake activities consistent with sedentary work. (Tr. at 219-20.)

The ALJ's findings also follow the opinions of the vocational expert which came in response to proper hypothetical questions that accurately portrayed Plaintiff's individual physical impairments in harmony with the objective record medical evidence, and in particular, the findings and assessments of Drs. Lewis and Zalla. (Tr. at 313-15.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

The ALJ failed to find Plaintiff's complaints of disabling limitations fully credible. In the present case, the ALJ acknowledged that Plaintiff had an impairment that could cause limitations; however, she found that the severe and debilitating nature of Plaintiff's alleged limitations were

10

not fully credible and provided reasons for this conclusion. The issue is whether the ALJ's credibility determinations are supported by substantial evidence. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645, at **3 (6th Cir. Feb. 11, 1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531.

Under this standard, I suggest that there is insufficient basis on this record to overturn the ALJ's credibility determination. In making her findings, I note that the ALJ also discounted a December 5, 2006, "to whom it may concern" letter from Dr. Zalla stating in part that, "It is my opinion that Mr. Carpenter is completely disabled due to his knee problem[.]" (Tr. at 260.) I suggest that this was not inappropriate, as this letter contains no descriptions of any objective medical tests leading to this result, contradicts findings made only four months earlier in his report to the Michigan Department of Human Services (Tr. at 219-20), and is inconsistent with the post-surgical findings of Plaintiff's treating surgeon, Dr. Lewis.

After review of the record, I therefore conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                 s/ *Charles E Binder*
                                                 CHARLES E. BINDER
Dated: August 18, 2008                        United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on William L. Woodard and the Commissioner of Social Security, served on Gary W. Carpenter, 256 Mclaren Court, Highland, MI 48357, via first class mail, and served on U.S. District Judge Gadola in the traditional manner.

Date: August 18, 2008            By     s/Patricia T. Morris
                                           Law Clerk to Magistrate Judge Binder